**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL TORNAVACCA,** ) | |
| ) | |
|       **Plaintiff,** ) | **Case No. EDCV 08-484 AJW** |
| ) | |
|       v. ) | |
| ) | **MEMORANDUM OF DECISION** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
|       **Defendant.** ) | |
| _____ ) | |

      Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

      The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Following an administrative hearing in June 2006, an administrative law judge ("ALJ") denied benefits in a September 2006 written hearing decision that constitutes the Commissioner's final decision. [JS 2; Administrative Record ("AR") 17-25]. The ALJ found that plaintiff had the following impairments, which were severe in combination: mood disorder not otherwise specified, chronic polysubstance abuse in

remission since October 2005 by history, morbid obesity, residuals of left shoulder surgeries, mild degenerative changes in the cervical spine, hepatitis C virus infection, and history of lumbar spine strain. [AR 19]. The ALJ determined that plaintiff's substance abuse and his mental impairment met or medically equaled the criteria for "substance addiction disorder" in section 12.09 of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, from October 2004 to October 2005.[1] [AR 19-21]. The ALJ concluded, however, that plaintiff's substance abuse was in remission after October 2005 and that his mental impairment did not meet or equal the listing before October 2004 or after October 2005. Accordingly, the ALJ found that plaintiff would not have been disabled during that period if he had stopped using drugs and alcohol, and that plaintiff's substance abuse was a contributing factor material to the determination of disability from October 2004 to October 2005, precluding an award of benefits for that period. [AR19-21]. The ALJ found that at other relevant times, plaintiff retained the residual functional capacity ("RFC") to perform a narrowed range of light work, and that his RFC did not preclude him from performing work available in significant numbers in the national economy. [AR 21-25].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

---

[1] Under section 12.09 of the listing, an individual is disabled by a "Substance Addiction Disorder" when that individual experiences "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system," and the behavioral or physical changes resulting from regular use of addictive substances meet the required level of severity for one of nine discrete listed mental or physical impairments, including "depressive syndrome" under section 12.04 of the listing.

one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Substance abuse as a contributing factor material to the determination of disability**

A claimant who otherwise meets the definition of disability under the Social Security Act is not eligible to receive disability benefits if drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). If the Commissioner finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the Commissioner must determine if the claimant would still be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007), cert. denied, 128 S.Ct. 1068 (2008). If a claimant would still be disabled if he or she stopped using drugs or alcohol, the claimant's drug or alcohol addiction is not a contributing factor material to the determination of disability, and benefits may be awarded. 20 C.F.R. §§ 404.1535(b), 416.935(b).

A two-step analysis is required to determine whether substance abuse is a material contributing factor. The ALJ first must determine which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol, and then must determine whether the remaining limitations would be disabling. If the remaining limitations are disabling, then the claimant's drug addiction or alcoholism is not a material factor to the determination of disability. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); Parra, 481 F.3d at 747.

The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material the disability determination, by showing that he or she would remain disabled if the substance abuse ceased. Parra, 481 F.3d at 748. Where the evidence of materiality is inconclusive, the claimant's burden of proof is not satisfied. Parra, 481 F.3d at 749-750 (rejecting the argument that a finding of materiality is precluded unless the medical evidence affirmatively shows that a disability will resolve with abstinence). To hold otherwise would give an addicted claimant "no incentive to stop" abusing drugs or alcohol, "because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." Parra, 481 F.3d at 750.

**Treating source evidence**

Plaintiff contends that the ALJ improperly evaluated treating source medical opinions from Doan Nguyen, M.D., and Lorraine Tsui, M.D. [JS 3-11].

**Dr. Nguyen**

Plaintiff contends that the ALJ erroneously rejected the treating opinion of Doan Nguyen, M.D., that plaintiff had a diagnosis of major depressive disorder, recurrent, with psychosis or with psychotic features, and a Global Assessment of Function ("GAF") score ranging from 30 to 50. [See JS 3-8].

Under the "treating physician rule," the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

Plaintiff's argument lacks merit. First, plaintiff's contention that the ALJ "rejected" Dr. Nguyen's November 2004 opinion is inaccurate. Although the ALJ did not mention Dr. Nguyen by name, he cited Dr. Nguyen's November 2004 discharge report to support his finding that plaintiff was disabled under the listing for substance abuse disorder beginning in October 2004. [AR 19].

Second, in arguing that the ALJ did not properly evaluate Dr. Nguyen's diagnosis of major depression and his GAF scores, plaintiff completely ignores additional, highly probative diagnoses and other information in Dr. Nguyen's reports. The ALJ properly considered Dr. Nguyen's reports as a whole in finding that although plaintiff was disabled by mental problems and substance abuse from October 2004 to October 2005, he would not be disabled absent substance abuse, and therefore substance abuse was a material factor contributing to his disability.

In a November 22, 2004 discharge report, Dr. Nguyen noted that plaintiff, aged 42, had been admitted to Arrowhead Regional Medical Center ("ARMC") Behavioral Health unit on November 18, 2004. Plaintiff presented at ARMC seeking voluntary psychiatric hospitalization, claiming that he had ingested 50 Elavil tablets and a pint of vodka a few days earlier in a self-described suicide attempt. [AR 184-186]. Plaintiff said that he had been prescribed Elavil, an anti-depressant, by his primary care doctor. [AR 184]. Plaintiff also said he was prescribed Klonopin for a seizure disorder (but later admitted he had not had any

seizures for a long time and did not take as much Klonopin as he said). [AR 177, 184]. Dr. Nguyen described plaintiff as having "self-reported major depression" and a history of past suicide attempts, mostly by overdose, which were "mainly to get attention." [AR 184]. Plaintiff said that he saw his primary care doctor, but he had never seen a county psychiatrist. [AR 184, 189]. Plaintiff "did not appear to comply with treatment" during his hospital stay. [AR184].

Plaintiff was discharged from ARMC on November 22, 2004 against medical advice after refusing to consent to voluntary psychiatric hospitalization for further treatment. [AR 184-186]. On discharge, Dr. Nguyen's primary diagnosis was major depressive disorder, recurrent, with psychosis by history. He gave plaintiff secondary diagnoses of multi-substance abuse and alcohol abuse. [AR 184]. Dr. Nguyen assigned plaintiff an admission GAF score of 25 and a discharge GAF score of 50.[2] [AR 175].

A few days later, plaintiff again was admitted to ARMC Behavioral Health unit for an overdose of five or six tablets of Elavil. [AR 175-178]. Plaintiff tested positive for opiates. Plaintiff was stabilized and discharged to Cedar House, a substance abuse rehabilitation facility that plaintiff had attended in the past, on November 20, 2004. [AR 175-183]. Dr. Nguyen's primary discharge diagnosis was major depressive disorder, recurrent, with psychosis, rule out bipolar disorder, not otherwise specified. [AR 175]. Dr. Nguyen gave plaintiff secondary discharge diagnoses of amphetamine abuse, cannabis abuse, and alcohol abuse. Dr. Nguyen assigned plaintiff an admission GAF score of 30 and a discharge GAF score of 50. [AR 175].

Information provided by plaintiff to Dr. Nguyen and a therapist who evaluated plaintiff while he was hospitalized indicates that plaintiff had a long history of polysubstance abuse. [See AR 175-192]. Plaintiff

---

[2] A GAF score is a "multiaxial" assessment that clinicians use for "tracking the clinical progress of individuals in global terms" using "a single value that best reflects the individual's overall level" of psychological, social, and occupational (but not physical) functioning. The GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 21 through 30 means that delusions or hallucinations considerably influence the individual's behavior, a serious impairment in communication or judgment exists (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation), or the individual is unable to function in almost all areas (e.g., stays in bed all day; no job, home, or friends). A GAF score of 41 through 50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)).

reported that he started drinking at age 11 or 12 and began using heroin at age 13. He said that he had used speed. He had been in and out of juvenile hall, and later had been sentenced to a state prison term of 32 months "secondary to possession." [AR 184]. Plaintiff stopped using heroin in 1998 due to incarceration. He had been paroled a few months before he was admitted to ARMC, and had to leave his parents' home in Arkansas after causing problems there. He had a sister nearby in California who had brought him to ARMC, but she was unwilling to be "co-dependent" with him. Plaintiff said he had no place to live and no job. [AR 175-192].

Dr. Nguyen did not address how long plaintiff would remain functionally impaired or whether plaintiff would remain functionally impaired if he stopped using drugs and alcohol. Those issues plainly are beyond the scope of his November 2004 discharge reports, and there is no indication that he treated plaintiff thereafter. The ALJ cannot be said to have "rejected" Dr. Nguyen's opinion on issues about which Dr. Nguyen expressed no opinion.

The ALJ properly considered Dr. Nguyen's reports as a whole. The ALJ did not violate the treating physician rule because he reasonably relied on those reports, along with other evidence, to find that plaintiff was disabled by the combined effects of a mental impairment and substance abuse contemporaneously with Dr. Nguyen's reports.

Plaintiff does not challenge the ALJ's evaluation of the record evidence he relied on to determine the dates of plaintiff's period of disability and the materiality of plaintiff's substance abuse. That evidence included (1) a June 2004 evaluation from the California Department of Corrections Parole Outpatient Clinic listing diagnoses of a dysthymic disorder and a GAF score of 60, indicating moderate symptoms or a moderate functional impairment on the borderline of the "mild" range [AR 19, 290]; (2) a September 2004 consultative psychiatric evaluation indicating that plaintiff had been undergoing regular drug tests while on parole since April 2004, had been sober for 40 days, and exhibited mild symptoms of depression and no more than mild mental functional restrictions [AR 19, 151-157]; (3) San Bernardino County Behavioral Health outpatient records from January 2005 stating that plaintiff admitted a history of heroin addiction, said he was addicted to Vicodin and Norco and had last used those drugs in November 2004, and had diagnoses of bipolar disorder, heroin dependence, and opioid dependence [AR 20, 215]; (4) ARMC Behavioral Health records showing that plaintiff was voluntarily hospitalized in February 2005, admitted to recent use of

1  amphetamines, exhibited strong narcotic seeking behavior (including "harassing" and "intimidating" the
2  medication nurse and telling staff that he "has never felt suicidal" and "just says that because he knows that
3  this is the way to get into the hospital" and obtain pain medication) [AR 19-20, 232-233]; (5) Loma Linda
4  University Medical Center Emergency Department records showing that plaintiff was hospitalized in March
5  2005 for right lung pneumonia and septic shock, and admitted that he was an intravenous drug abuser as
6  recently as six months earlier [AR 20, 915]; (6) November 30, 2005 San Bernardino County Mental Health
7  treatment notes saying that plaintiff's goals were to complete 90 days of treatment at Cedar House followed
8  by sober living and attendance at 12-step meetings [AR 20, 203]; (7) plaintiff's testimony that he had not
9  had a drink since October 2005 and had not used heroin or street drugs since his release from jail in April
10 2004 [AR 20, 1057-1059]; and (8) the medical expert's testimony. [AR 20, 1085-1098]. This evidence,
11 along with Dr. Nguyen's reports, provides substantial support in the record for the ALJ's findings with
12 respect to the materiality of plaintiff's substance abuse to his disability.

**Dr. Tsui**

14 Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Tsui's
15 opinion that plaintiff had multiple marked mental limitations. [JS 8-11].
16 Dr. Tsui completed a "Work Capacity Evaluation (Mental)" dated April 19, 2006 indicating that
17 plaintiff had slight, moderate and marked mental functional limitations, including marked limitations in the
18 ability to perform activities within a schedule, maintain regular attendance, be punctual within customary
19 tolerances, work in coordination with or in proximity to others without being distracted by them, interact
20 appropriately with the general public, accept instructions and respond appropriately to criticism from
21 supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes,
22 and to set realistic goals or make plans independently of others. [AR 225-226]. Dr. Tsui added that plaintiff
23 was not a malingerer and would likely be absent from work due to his impairments more than three days
24 each month. [AR 226].
25 The ALJ gave Dr. Tsui's opinion "no weight." [AR 22-23]. He noted that Dr. Tsui did not indicate
26 the findings on which her assessment was based. He observed that the only other report from Dr. Tsui in
27 the record was a June 13, 2006 statement that merely listed plaintiff's medications, did not identify Dr.
28 Tsui's specialty or how long she had treated plaintiff, did not provide any objective or clinical findings

7

supporting her assessment, and gave no indication whether Dr. Tsui was aware of plaintiff's history of polysubstance abuse. [AR 23].  Those were legally sufficient reasons for rejecting Dr. Tsui's opinion. See Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004) (upholding the ALJ's rejections of an opinion that was "conclusionary in the form of a check-list," and lacked supporting clinical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ permissibly rejected "check-off" psychological evaluations that did not contain any explanation of the bases of their conclusions).

Plaintiff submitted additional evidence to the Appeals Council from Dr. Tsui consisting of letters dated November 15, 2005 and May 18, 2007 (in duplicate), and a receipt for an office visit (in duplicate). [AR 3, 1042-1049]. In November 2005, Dr. Tsui wrote only that plaintiff "first saw me on August 5, 2005, and is still under my care." [AR 1046].  In May 2007, Dr. Tsui wrote that she began seeing plaintiff on August 5, 2005, and last saw him on February 28, 2007, and that "[i]t that time, he was doing well." [AR 1042, 1044].  Dr. Tsui added that plaintiff's diagnoses are "Bipolar Affective Disorder and Chronic Insomnia," and that his current medications were Ambien CR 12.5 milligrams 1 qhs (nightly at bedtime), Elavil 200 milligrams 1 qhs, and Seroquel[3] 100 milligrams 1 qam (every morning) and 2 qhs.  [AR 1042, 1044].  The office visit receipt reflects a 15-minute medication management visit on May 22, 2007, and a diagnosis of bipolar affective disorder, manic. [AR 1043, 1045]

The additional evidence from Dr. Tsui does not render the ALJ's rejection of her April 2006 "check-the-box" form erroneous or warrant reversal of the ALJ's decision.  The November 2005 letter says nothing about plaintiff's diagnoses, treatment, or functional abilities. The May 2007 letter says that plaintiff is still seeing Dr. Tsui, but no details of his treatment history are provided.  Dr. Tsui gives plaintiff a diagnosis of bipolar disorder, but she provides no objective or clinical findings substantiating either that diagnosis or the assessment reflected on her April 2006 evaluation form. Dr. Tsui's statement that plaintiff is "doing well" on his prescribed medication in May 2007 supports, rather than detracts from, the ALJ's finding of non-disability.  Dr. Tsui's failure to mention the extensive history of substance abuse plaintiff admitted to Dr. Nguyen and other physicians, including the Commissioner's consultative psychiatrist, Reynaldo Abejuela,

---

[3] Seroquel (quetiapine fumarate) is prescribed for the treatment of bipolar disorder.  See http://www.seroquelxr.com/index.aspx (last visited September 25, 2009).

M.D., further undermines plaintiff's argument that the ALJ erred in rejecting Dr. Tsui's April 2006 opinion. [See AR 151-157]. Accordingly, plaintiff's argument lacks merit.

**Information from "other sources"**

Plaintiff contends that the ALJ erred in rejecting the evaluation of Matt Sadovsky, a marriage and family therapist ("MFT") who conducted a "Psychosocial Evaluation" of plaintiff on November 30, 2004. [JS 11-13].

In his evaluation, Mr. Sadovsky concluded that plaintiff exhibited, among other things, "severe disabling cognitive disorganization, severe disabling emotional disorganization, [and] severe and disruptive hallucinations . . . ." [AR 180]. Mr. Sadovsky did not make formal diagnoses. He noted that plaintiff's treatment involved medication, psychiatric stabilization, symptom management, mobilizing support systems, and discharge planning. [AR 182].

Evidence from an "acceptable medical source" is required to establish the existence of a "medically determinable impairment," that is, an impairment that can serve as the basis for a finding of severity or disability. See 20 C.F.R. §§ 404.1508, 404.1513(a), 416.908, 416.913(a). Unlike a licensed physician or psychologist, an MFT is not an "acceptable medical source" whose findings can establish the existence of a medically determinable impairment. A MFT falls into the category of "other sources." See 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ "may also use" information in the record from "other sources" "to show the severity" (but not the existence) of a claimant's medically determinable impairments and how those impairments affect the ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ, however, is not required to give that information the same weight as information from an acceptable medical source. See Gomez v. Chater, 74 F.3d. 967, 970-971 (9th Cir.)(explaining that opinions from "other sources" may be given less weight than those from "acceptable medical sources" under the governing regulations), cert. denied, 519 U.S. 881 (1996).

Plaintiff's argument fails. First, the ALJ found that plaintiff was disabled by his mental problems and substance abuse beginning in October 2004, so the argument that the ALJ improperly disregarded Mr. Sadovsky's November 30, 2004 disability opinion is not well taken.

Second, as an acceptable medical source who was on the same treatment team at ARMC Behavioral Health as Mr. Sadovsky, Dr. Nguyen's opinion is entitled to greater weight than that of Mr. Sadovsky, who

does not qualify as an acceptable medical source. See Gomez, 74 F.3d at 970-971. The ALJ properly weighed Dr. Nguyen's report. Thus, any error in his assessment of Mr. Sadovsky's opinion was harmless. See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.")(citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir.1990)).

**Mental RFC**

Repeating the same arguments advanced with respect to Dr. Nguyen, Dr. Tsui, and Mr. Sadovsky, plaintiff contends that the ALJ's RFC finding is defective because it fails to incorporate plaintiff's "severe cognitive and emotional impairments," and because the ALJ failed to specifically mention the GAF scores of 30 and 50 assigned by Dr. Nguyen. [JS 15-16].

The ALJ did not err in evaluating the opinions of Dr. Nguyen, Dr. Tsui, and Mr. Sadovsky. Accordingly, plaintiff's contention that errors in the ALJ's evaluation of that opinion evidence tainted his RFC finding are unfounded. The ALJ's failure to specifically mention the GAF scores assigned by Dr. Nguyen is not error, given that the ALJ found plaintiff disabled during the period in which Dr. Nguyen assessed those GAF scores.

**Obesity**

Plaintiff contends that the ALJ did not adequately evaluate the effects of plaintiff's obesity. [JS 17-27]. Plaintiff is 5'11" in height and weighs 275 pounds. [JS 17, 158].

The ALJ has a duty to determine the effect of a disability claimant's "obesity upon her other impairments, and its effect on her ability to work and general health," even where the claimant's obesity was not independently "severe" and was not explicitly alleged to be a "disabling factor." Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003)(reversing and remanding the Commissioner's decision that the claimant could perform light work for a "multiple impairment analysis that explicitly accounts for the direct and marginal effects of the plaintiff's obesity during the period in question and that culminates in reviewable, on-the-record findings"). In Celaya, the Ninth Circuit held that the ALJ erred in not inquiring into the "interactive effects" of the claimant's obesity and her severe impairments of hypertension and diabetes for the following three reasons:

> First, it was raised implicitly in [the claimant's] report of symptoms. Second, it was clear from the record that [her] obesity was at least close to the listing criterion, and was a

condition that could exacerbate her reported illnesses. Third, in light of [the claimant's] pro se status, the ALJ's observation of [the claimant] and the information on the record should have alerted him to the need to develop the record in respect to her obesity.

Celaya, 332 F.3d at 1183.

After Celaya was decided, obesity was deleted as a listed impairment, impairments, but the Commissioner's regulations instruct adjudicators to consider whether obesity, alone or combined with other impairments, causes or exacerbates a claimant's functional limitations. See 20 C.F.R. Part 404, Subpart P, Appendix 1, ¶¶ 1.00Q, 3.00I & 4.00I (directing adjudicators to "consider any additional and cumulative effects of obesity" because obesity is "a medically determinable impairment often associated with" musculoskeletal, respiratory or cardiovascular impairments that "can be a major cause of disability in individuals with obesity," and stating that the combined effects of obesity with other impairments may be greater than expected without obesity); Social Security Ruling 02-1p, 2000 WL 628049, at *3, *5 (stating that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "may increase the severity of coexisting or related impairments," and explaining that when evidence of obesity is found in the record, adjudicators must consider and explain whether obesity, either alone or interacting with other impairments, causes any physical or mental limitations).

Plaintiff asserts that the ALJ failed to consider plaintiff's obesity when making his severity determination or at other steps in the sequential evaluation. in his decision. Plaintiff is wrong.[4]

The ALJ found that plaintiff's obesity was not severe, standing alone, but that it was severe in combination with his other impairments. [AR 19-20]. The ALJ also explicitly considered the effect of plaintiff's obesity on his other impairments and his ability to work. The ALJ found that plaintiff's obesity, combined with his other physical impairments, did not meet or equal any listed impairment. [AR 20-21]. He noted that plaintiff had radiographic findings of mild degeneration in the cervical spine and post-

---

[4] There are flagrant inaccuracies in plaintiff's recitation of the facts regarding the ALJ's decision suggesting that much, if not all, of plaintiff's argument about obesity pertains to someone other than plaintiff and was copied into plaintiff's brief without revision. For example, plaintiff says that the ALJ found that plaintiff had severe "diabetes mellitus, status-post stroke with residual neurological deficits involving the left lower extremity and hypertension." [JS 17 (quoting AR 13)]. No such finding appears on the cited page, which is not part of the ALJ decision, or anywhere in the ALJ's decision. [See AR 13, 17-25].

11

operative changes in the right shoulder, but no medical evidence of serious musculoskeletal dysfunction. [AR 20]. Although plaintiff was hospitalized for pneumonia and sepsis in March 2005, the ALJ observed that plaintiff did not have a history of chronic pulmonary problems, and that there was no evidence of permanent pulmonary restrictions. [AR 20-21, 22]. Plaintiff had hepatitis C infection, but there was "no credible evidence that his hepatitis C infection or his liver disease has been symptomatic." [AR 21]. Plaintiff had "a history of seizures secondary to an old head injury" with past treatment for that disorder, but without evidence of consistent treatment or recent seizures. [AR 21]. The ALJ concluded that plaintiff's impairments, including obesity, did not preclude him from performing a narrowed range of light work that would not preclude him from performing jobs that exist in significant numbers in the national economy. [AR 21-25].

Unlike in Celaya, the ALJ considered plaintiff's obesity, determined it was severe in combination with plaintiff's other impairments, considered its effect on plaintiff's other impairments, and made appropriate findings. Unlike in Celaya, plaintiff was represented by an attorney during the hearing who could raise and argue the issue of plaintiff's obesity as warranted by the evidence. The ALJ satisfied his duty to inquire into the effects of plaintiff's obesity.

## Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED: September 28, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge